## Browder, Executrix, et al. v. Nourse, et al.

(Decided March 13, 1923.)

### Appeal from Logan Circuit Court.

1. Executors and Administrators—Evidence Held Not to Show Fraud, Misconduct, or Conspiracy in Sale.—Evidence in an action to vacate the confirmation of a sale of the lands of a decedent to pay his debts held not to sustain the allegations that the purchaser and his associates had conspired to depreciate the market price of the land by circulating false reports concerning it, that the master commissioner had been guilty of misconduct in conducting the sale, and that the attorney for the estate had been corrupted, and had joined the conspiracy to complete the sale for an inadequate price.

2. Executors anld Administrators—Next Highest Bidder for Redemption Cannot be Compelled to Perform on Highest Bidder's Failure.—The master commissioner need not report the next highest bidder at the sale of the right of redemption of land where the judgment directing the sale made no such requirement, since such bidder could not have been compelled to pay his bid after the failure of the highest bidder to perform.

3. Executors and Administrators—Attorney for Parties Can Bid at Judicial Sale Unless Clients Object.—There is no rule which forbids an attorney for a party to the proceeding from bidding at a decretal sale if he does so with the approval of his clients, who alone may call in question his good faith in the transaction.

4. Executors and Administrators—Evidence Held Not to Show Price Received for Coal Property was Inadequate.—In an action to vacate the confirmation of a sale of coal mining property to pay the debts of decedent, evidence held not to show that the price bid at the sale was inadequate, though it was far below the appraised valuation of the property.

5. Executors and Administrators—Prima Facie Effect of Appraisement May be Overcome.—In case of a judicial sale of property for the payment of debts of a decedent, the appraisement must be regarded as the prima facie basis upon which the value is to be fixed; but such basis may be overcome by reliable and convincing evidence that the property was not worth the appraised valuation.

6. Infants—Confirmation of Sale Cannot be Set Aside as to Infants if Infancy Appeared in the Record, and they were Represented by Guardian.—Under Civil Code of Practice, section 518, subsection 5, giving a court power after the expiration of the term to vacate or modify a judgment for erroneous proceedings against a person under disability if the condition of such defendant does not appear in the record nor the error in the proceedings, a confirmation of a sale of property for the payment of decedent's debts rendered at a prior term cannot be set aside at the suit of infant heirs where it appeared in the ·proceedings for sale that

they were infants, and each had appointed for him a guardian ad litem who filed an answer.

R. MURRAY HAYS and MORTON K. YONTS for appellants.

S. R. CREWDSON, S. Y. TRIMBLE and JOHN D. CARROLL for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

In March, 1916, R. W. Browder died a resident of Logan county. He left a will wherein he designated his brother, W. W. Browder, executor and his wife, Lydia Browder, executrix of his will.

Decedent was at the time of his death indebted to the extent of thirty thousand dollars. Some of his debts were secured by mortgages on his realty, some of them by pledge as collateral of certain stock he owned in a corporation, and some of them were unsecured. Prior to his death some of his creditors were insisting upon the payment of their debts and were threatening suit against him, and this situation existed at the time of his death.

The personal representatives employed Mr. Wilbur F. Browder, a kinsman of the decedent and a distinguished lawyer of Russellville, as their counsel. This gentleman, desiring to forestall any separate actions by creditors, on the same day the personal representatives qualified filed an equitable action against the devisees and creditors of the decedent wherein it was alleged in substance that the personal property was insufficient for the payment of debts, and alleging the nature of the debts and that some of them were secured as aforesaid, and then prayed for a sale of decedent's two-thirds interest in certain coal mining properties situated in Muhlenberg county, as well as the stock so pledged.

The parties were all brought before the court, the creditors filed their claims, some of them by pleading, and finally in February, 1917, a judgment of sale was entered.

The executor, W. W. Browder, owned the other one-third undivided interest in the coal mining property involved and was, in his individual capacity, a party defendant.

The coal mining property consisted of about seven hundred and thirty-five or forty acres, in a large part

of which the Browders only owned the coal mining interest, but to a part of which they had absolute title. The decedent also owned at the time of his death one hundred and ninety-four and one-fourth shares of the capital stock of the Southern Land & Coal Company, a corporation owning coal lands and rights near to or adjoining the Browder coal property referred to.

The judgment of sale in the settlement suit, after reciting the various liens upon the property and upon the stock in the corporation referred to, directed a sale of each for the purpose of settling the estate. The judgment directed the master commissioner to sell all of the property on or near the coal mining premises, including the stock in the corporation, the principal assets of which were in that immediate locality, and the sale was directed by the court to be held upon a certain day, to-wit, the 14th day of April, 1917, and was unusually specific in directing the manner of its advertisement. It directed not only that the sale should be advertised at Russellville and at and near the location of the property in Muhlenberg county, but directed the advertisement should be inserted in certain local newspapers and in addition to all this that it should be advertised in the Louisville Courier-Journal and a coal mining publication at Chicago.

The sale was had as directed and the coal mining property was sold as a whole, W. W. Browder having joined in the prayer to that end, and the shares of stock were sold in blocks according to the number of shares pledged to the various creditors. At the sale S. Y. Trimble was the purchaser of the coal mining property at the price of seventy-eight hundred dollars, and various parties became purchasers of the corporation stock, aggregating forty-five hundred dollars for the one hundred and ninety-four and a fraction shares.

Before the sale the coal mining property as a whole was appraised at forty-two thousand one hundred and thirty dollars, and at the first term of court after the sale the attorney for the executors filed exceptions thereto, which exceptions, however, were never passed upon by the court until after the expiration of the right of redemption at which time they were finally overruled. Pending the period of redemption, however, at the instance of the plaintiff a new judgment was entered directing a sale of the right of redemption, and at that

sale the right of redemption was sold to a corporation for eighty-two hundred dollars, making the aggregate price of the coal mining property sixteen thousand dollars. The purchaser was a corporation organized by the widow of R. W. Browder and her newly employed counsel and advisor for the purpose of buying the right of redemption, thus becoming the owner of the property. This corporation and purchaser, however, never complied with the terms of that sale by executing a solvent bond, and in fact only paid five hundred dollars of the purchase money.

After the right of redemption had expired the court overruled the exceptions filed to the first sale, and made to the original purchaser a deed for the property, he having paid the purchase money bonds.

This is a new action instituted by the widow, who is now sole executrix, and in which she individually joins, together with the other devisees of R. W. Browder, seeking to cancel and set aside the first sale and the order of confirmation thereof and the order overruling the exceptions thereto. R. W. Browder had two infant sons at the time of his death, who join in this action. The chancellor below dismissed their petition and declined to grant them any relief, and from that judgment this appeal is prosecuted.

The petition seeks not only to vacate and set aside the judgment of confirmation of the sale of the coal properties, but also the cancellaiton of the sale of the shares of stock involved.

. The allegations for the plaintiffs and cross-plaintiffs are in substance that the purchaser, Trimble, and his associates fraudulently conspired before the first sale to purchase the mining property at a price below its actual value, and to that end caused damaging reports to be circulated concerning the coal mining property, to-wit, that there existed in the said mine an underground creek of flowing water of such volume as made it impossible to operate the mine profitably, and that the coal contained therein was full of gas and could not be mined profitably and safely and that the quality of the coal deposits therein was poor; that because of the circulation of such false reports by the purchaser and his associates the property brought much less than its value and they were enabled to purchase the same at the low price of

seventy-eight hundred dollars when the same had been appraised as aforesaid.

It is also alleged that after the sale W. F. Browder, the attorney for the estate, filed in court a written protest against the approval of the sale and asked that the same be set aside, but that thereafter and in pursuance of said conspiracy between the purchaser and his associates they wrongfully and fraudulently corrupted the attorney for the estate and the latter suffered himself to be wrongfully and fraudulently corrupted and joined with the purchaser and his associates in their said conspiracy and aided them to perfect the sale of said property to themselves at an unconscionably low price and to the loss of the creditors and heirs of the estate, and aided and abetted said purchasers to have the sale approved by the court.

The issues were joined upon these and other allegations involving the propriety of the action of the master commissioner.

The defendants accurately and precisely denied each and all of these allegations and in addition pleaded and relied upon the defense of *res judicata* as to the sale. For the purposes of this opinion, however, it is not deemed necessary to discuss the question of *res judicata*.

Grouping the charges as to the misconduct of the master commissioner and the alleged fraud of the attorney for the estate and the allegations of conspiracy of the purchaser and his associates, we may say without elaboration that there is in this whole enormous record no semblance of basis for any one of these charges. The master commissioner, as disclosed by the record, followed the judgment of the court in advertising and in conducting the sale and in reporting the same to the court, with unusual accuracy and precision. As to the attorney for the estate, the record discloses that he gave great time, care and attention to the conduct of the affairs of his deceased relative; that he had voluminous correspondence with a great many people about this coal property before the sale, to the end that it might bring a fair price; that he placed in the judgment of sale extraordinary provisions with reference to the advertisement of this property, and there is in fact not even a suspicious circumstance disclosed in the record from which it might be remotely inferred he had in any respect been guilty of bad faith. It may be said with equal

emphasis there is nothing in the evidence justifying the inference that the purchaser, or any of his associates, made or circulated any slanderous statements for the purpose of acquiring this property at an inadequate price, or for any purpose whatever.

But it is said it was the duty of the master commissioner to have reported when the sale of the right of redemption was had, not only the highest bidder but the next highest bidder, to the end that if the highest bidder did not comply with the terms of the judgment and execute a good bond, the next highest bidder might be required to do so. In the first place a master commissioner in executing a sale is confined to the directions contained in the judgment, and in the judgment in this case no such direction or authority was given him. In the next place if he had without authority made a report showing who the next highest bidder was, it would have constituted no sale to that bidder and could not have been enforced as against him. Brashears v. Holliday, 30 R. 913.

It is likewise insisted that as the purchaser was an attorney representing the two creditors in the suit, he could not become a bidder and purchaser at the sale. The purchaser was attorney for two creditors, and those two creditors held in pledge certain of the corporate stock sold to secure their debts, and one of them in addition had a secondary mortgage on some parts of the real estate.

We are aware of no rule which prevents an attorney from being a bidder at a decretal sale, but if he does bid at such a sale where the rights of his client are involved and bids for his own use and benefit, the client may claim the bid for his own benefit. This rule grows out of the equitable doctrine that if an attorney undertakes to secure an advantage for himself which will operate to the detriment of his client, to whom he owes the first duty, then the client, at his option, may claim the benefit of his bid.

But none of these things apply in this case for the reason that his clients are not complaining; on the contrary they have expressly in this record by pleading approved his conduct. His own two clients were the only persons to whom he owed any superior duty, and they alone may call in question his good faith in the transaction. 4 Cyc. 958; 17 Am. & Eng. Enc. 963; 2 R. C. L. 973.

But it is said there was gross inadequacy of price and this in and of itself justifies a setting aside of the sale at the instance of the infants.

It is unnecessary in this case to go into the question whether inadequacy of price is alone a sufficient ground to set aside a sale at the instance of an infant, for two reasons: first, we have concluded from the whole evidence in the case that the purchase price at the two sales was not grossly inadequate, and, in the second place, it is perfectly plain from the record that even if the coal property and the corporate stock involved should, upon another sale, bring approximately as much as appellants now claim it is worth, it could not possibly benefit the infants. Several witnesses testify as to the value of this coal property. Of the two appraisers who appraised it at about forty-two thousand dollars, one of them, and one only, attempted to justify that valuation, but when he was required to value the property and plant in detail it is quite plain the valuation was vastly too high. The facts disclosed by the testimony of the other appraiser clearly indicated the appraisement was entirely too high. On the other hand a number of practical coal operators testify as to the valuation, and their estimates ranged from six thousand to twenty thousand dollars. It appeared in evidence that several persons or corporations had undertaken to operate this property and that none of them had ever made a financial success of it. It likewise appeared that some years before the sale in question, while the property was in operation, a great explosion occurred in this mine wherein a number of people were either killed or injured, and there can be no doubt this admitted fact entered into the value of the property at the sale. One highly intelligent witness testifies he had offered tentatively twenty thousand dollars for the property during this period, but that when he came and examined it he declined to take it at that or any other price.

Not only so, it appears that the decedent in his lifetime had been trying for several years to make an advantageous sale of this property and had been unable to do so at anything which he regarded as a fair price.

Of course on exceptions to a sale the appraisement must be regarded as the *prima facie* basis upon which the value is to be fixed; but it is only *prima facie* and may be overcome, and we have no hesitancy in saying in

this case that the reliable and convincing evidence points plainly to the conclusion that this property was not in 1917 worth exceeding from sixteen to twenty thousand dollars.

Another convincing fact is that these purchasers who at the first sale bid seventy-eight hundred dollars, at the sale of the right of redemption declined to bid over eighty-one hundred dollars, showing convincingly that the property in which they were then interested as purchasers was, in their opinion, not worth sixteen thousand dollars. The presumption is those gentlemen during that year had accurately and carefully investigated the value of the property in which they had thus become interested.

But suppose the sale of this property should be set aside and upon another sale the coal property and the corporate stock should realize $40,000.00 instead of twenty thousand dollars, of what practical benefit would it be to these infants?

Their father's debts amounted, in 1917, to thirty thousand dollars, and they have all been bearing interest since then, and then the costs of administration would consume the whole in any event if the properties brought forty thousand dollars, a thing which we regard as entirely fanciful and of remote realization in any event.

The action is essentially one to vacate the judgment of the circuit court in the former action overruling the exceptions to the sale and approving the same, under the provisions of section 518 of the Civil Code. And the two grounds alleged are fraud, which is made a ground by subsection 4 of that section, and erroneous proceedings against the infants under subsection 5 thereof. We have seen that the charges of fraud are wholly unsubstantiated, and in no way sustained, and that leaves the only thing in the case whether there was such error in the proceedings in the former action as against the infants as would authorize the setting aside of that judgment.

Subsection 5 of section 518 provides that a court in which a judgment has been rendered shall have power after the expiration of the term to vacate or modify the same "For erroneous proceedings against a person under disability, except coverture, if the condition of such defendant do not appear in the record, nor the error in the proceedings."

The two defendants were parties to the former suit for a settlement of the estate in which the sale was had; it appeared therein they were infants and they each had a guardian *ad litem* appointed for them, who filed an answer, and the trustee named for them in the will of their father was a party to the action.

The only things now relied upon to set aside the confirmation of that sale are the charges of fraud and collusion which we have above referred to and as they have been eliminated, under the subsection quoted the infants cannot sustain this action, because the other things complained of appeared in the settlement suit.

On the whole case we see no error to the substantial rights of the appellants or any of them.

Judgment affirmed.